IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PARAGON DATA SYSTEMS, INC.<br>2218 Superior Avenue<br>Cleveland, Ohio 44114 | ) <br> ) <br> ) | CASE NO.: |
| Plaintiff, | ) | JUDGE |
| v. | ) <br> ) | |
| SPECTRUM HEALTH SYSTEM,<br>c/o David M. Leonard<br>221 Michigan St. NE, Suite 501<br>Grand Rapids, MI 49503 | ) <br> ) <br> ) <br> ) | COMPLAINT<br>(JURY DEMAND ENDORSED HEREON) |
| and | ) <br> ) | |
| JOHN DOES 1 THROUGH 5 | ) | |
| and | ) <br> ) | |
| ABC CORPORATION | ) | |
| Defendants. | ) | |

Plaintiff Paragon Data Systems, Inc. ("Paragon" or "Plaintiff"), by and through its undersigned attorneys, for its Complaint herein, states as follows:

**GENERAL STATEMENT OF THE NATURE OF THIS ACTION**

This action is brought by Paragon to recover damages caused by Defendant Spectrum Health System ("Spectrum" or "Defendant") and perhaps others acting in concert with Defendant for breach of contract/tortious interference with contract including as a result of the disclosure of Paragon's proprietary technology as described further below.

## PARTIES

1. Plaintiff Paragon is an Ohio corporation with its principal place of business located in Cleveland, Ohio. Paragon was, at all relevant times, engaged in the business of integration of software solutions for companies with data collection requirements. Paragon designs, creates and re-sells software solutions, including barcodes, tags, and labels for a variety of industries and uses.

2. Defendant Spectrum is a large multispecialty physician group in Western Michigan. Defendant's corporate address is 100 Michigan St. NE, Grand Rapids, MI 49503.

## BACKGROUND AND GENERAL ALLEGATIONS

3. Effective December 4, 2012, Paragon and Spectrum entered into a contract entitled "SafeBaby Breast Milk Tracking Software System MASTER LICENSE AND SERVICES AGREEMENT" (the "Agreement"), a true and correct copy of which is attached hereto as **Exhibit A**. The Agreement gave Spectrum access to what was described therein as the "SafeBaby Breast Milk Tracking Software System" (the "Paragon System"), which integrated Paragon's proprietary software with certain hardware to achieve Spectrum's desired result.

4. Being satisfied with the performance of the Paragon System, Spectrum continued to renew the Agreement annually.

5. Pursuant to the Agreement, Spectrum agreed and acknowledged, at Article II, Section 1:

> Paragon developed and owns, and continues to develop and own, certain proprietary software for use in connection with the products and services delivered under the Agreement (the "Software").

6. Pursuant to Article II, Section 2 of the Agreement, Paragon and Spectrum agreed that Paragon's proprietary "Software" included:

> ... (iii) the Software, including its underlying technology, software, object and source code, processes, methods, algorithms, user interfaces, know-how and other trade secrets, techniques, designs, discoveries, inventions, structure, features, components, and other tangible or intangible technical material or information; and
>
> (iv) the work product, and any other work of authorship or invention conceived of, developed, or created by Paragon during this Agreement (or any addendum thereto) that relates to the Software, including any Customer specifications for the Software, is and shall remain the exclusive property of Paragon (the "Paragon Technology"). Customer further agrees and acknowledges that the Paragon Technology is or may become protected by intellectual property rights owned or licensed by Paragon (collectively the "Paragon IP Rights"). Other than as expressly set forth in this Agreement, no license or other rights in or to the Paragon Technology or the Paragon IP Rights are granted to Customer, and all such licenses and rights are hereby expressly reserved by Paragon.

7. To protect Paragon's rights to its intellectual property, the parties to the Agreement specifically agreed to restrict Spectrum's disclosure of the "Paragon Technology" as stated in Article III, Section 2:

> Under no circumstances may Customer, without prior written permission from Paragon ... (ii) directly or indirectly provide access to the Paragon Technology to a third party; (iii) copy or permit a third party to copy the Paragon Technology; or (iv) duplicate, examine, adapt, merge, embed, decompile, disassemble, "un-lock", reverse engineer, or create a derivative work from any of the Paragon Technology.

8. Further, pursuant to the Agreement, Paragon was to provide, and did provide, to Spectrum certain Software and Equipment for Spectrum's use at specific business locations identified on Schedule "A" to the Agreement.

9. Spectrum also agreed that Paragon would be Spectrum's exclusive supplier for "all bar code supplies, SafeBaby Bottle labels, SafeBaby Syringe labels, and all replacement

parts, spare parts, and attachments and accessories (collectively referred to as "Bar Code Products") which are used in the operation of the Software and Equipment listed on **Schedule B**" for the duration of the Agreement. *See* **Exhibit A**, Article VIII, Section 1.

10. Finally, pursuant to Article I, Sections 1-2 of the Agreement, the parties agreed that the Agreement would automatically renew for a one-year period on December 4 of each year "unless Paragon and/or Customer provide written notice of its intent to not renew this Agreement and/or the service portion of this Agreement at least sixty (60) days in advance of the then-current term."

11. Spectrum and Paragon agreed that written notice of intent not to renew the Agreement or any portion thereto "shall be delivered by prepaid U.S. Certified Mail, overnight courier, or via Facsimile" and notice was effective only "upon receipt by the party if sent by U.S. Certified Mail. . . ." *See* **Exhibit A**, Article XV, Section 2.

12. Paragon did not waive any of its right under this Agreement. Specifically, Article XV, Section 7 of the Agreement states that "no failure to exercise and no delay in exercising any right, power, or privilege under this Agreement on the part of either party shall operate as a waiver of any right, power, or privilege under this Agreement . . . [and] the various deadlines for the performance of certain acts provided in this Agreement are mandatory and cannot be waived, unless in writing by Paragon and Customer."

13. On October 14, 2020, Paragon received a letter (the "Letter") from Spectrum stating that Spectrum intended to terminate the Agreement. A true and accurate copy of the Letter with tracking information showing the date Paragon received the letter is attached hereto as **Exhibit B** and incorporated herein by reference.

14. After receipt of the Letter, Paragon sent a response letter to Spectrum (the "Response Letter") notifying Spectrum that the Agreement had automatically renewed for one (1) year from December 4, 2020 through December 3, 2021, because Spectrum did not timely terminate the Agreement, as Paragon received Spectrum's Letter nine (9) days after the deadline. Paragon demanded that Spectrum respond and fully comply with the terms of the Agreement. A true and accurate copy of Paragon's Response Letter is attached hereto as **Exhibit C** and incorporated herein by reference.

15. Spectrum has not responded to the Response Letter, leaving Paragon no choice but to file this action to pursue its rights under the Agreement.

16. Further, based on information and belief, Spectrum breached the Agreement by providing access to the "Paragon Technology" to unauthorized individuals and/or entities, to facilitate development of software to replace the Paragon System.

17. To the extent any person or entity, as-yet unknown, but identified in the caption as John Does 1 through 5 or ABC Corporation, was or were aware of the Agreement and engaged in conduct in concert with Spectrum to access the Paragon Technology, Paragon possesses potential claims for tortious interference and theft of trade secrets against those individuals or entities.

18. The Agreement further provides, at Article XV, Sections 3-4, as follows:

> 3. This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan. . ..
>
> 4. If any legal action is necessary to enforce the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees in addition to any other relief to which that party may be entitled."

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the dispute is between two companies with principal places of business in different states and the amount in controversy exceeds $75,000.00.

20. Venue is appropriate in this district, pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events that give rise to Paragon's claims occurred in the judicial district encompassed by the United States District Court for the Northern District of Ohio.

## COUNT ONE
**(Breach of Contract)**

21. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

22. Spectrum beached the Agreement by: (a) sending a termination Letter after the termination deadline, and (b) based on information and belief, by failing to comply with the Agreement's provisions related to use and disclosure of Paragon Technology by providing access or disclosing proprietary information related to the Paragon Technology to other individuals or entities.

23. Paragon fully complied with its obligations under the Agreement.

24. As a direct result of Spectrum's breach of the Agreement, Paragon has suffered monetary damages in an amount not yet determined but in excess of $75,000.00, including reasonable attorney's fees, costs, prejudgment interest, and any other damages to which Paragon is entitled in law or in equity.

## COUNT TWO
### (Declaratory Judgment)

25. Paragon incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

26. There is a controversy between Paragon and Spectrum as to whether Spectrum must comply with the terms of the Agreement, as Spectrum unsuccessfully attempted to terminate the Agreement when it sent the Letter.

27. This dispute remains live and unresolved between the parties.

28. To resolve this live dispute, Paragon requires a Judgment from this Court declaring that Spectrum is in breach of the Agreement and requiring Spectrum to fully comply with the Agreement, including payment for the Paragon Software and Bar Code Products pursuant to the Agreement.

## COUNT THREE
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

29. Paragon incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

30. The Agreement includes an implied covenant of good faith and fair dealing.

31. Spectrum breached the implied covenant of good faith and fair dealing based on the conduct set forth above.

32. As a result of Spectrum's breach of the implied covenant of good faith and fair dealing, Paragon has suffered monetary damages in an amount not yet determined but in excess of $75,000.00, including reasonable attorney's fees, costs, prejudgment interest, and any other damages to which Paragon is entitled in law or in equity.

## COUNT FOUR
### (Unjust Enrichment)

33. Paragon incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

34. Spectrum's use of the Paragon System to develop technology for its personal use resulted in Spectrum's receipt of a benefit for which it has not paid Paragon.

35. Should Spectrum retain that benefit without fairly compensating Paragon, it would be unjustly enriched to Paragon's detriment.

36. Under the circumstances, Paragon has suffered monetary damages in an amount not yet determined but in excess of $75,000.00, including reasonable attorney's fees, costs, prejudgment interest, and any other damages to which Paragon is entitled in law or in equity.

WHEREFORE, Plaintiff Paragon demands judgment in its favor and against Defendant Spectrum as follows:

A. On Count One, for judgment in an amount not yet determined but in excess of $75,000.00, including reasonable attorney's fees, costs, prejudgment interest, and any other damages to which Paragon is entitled in law or in equity;

B. On Count Two, for an Order from the Court declaring that Spectrum is in breach of the Agreement and requiring Spectrum to fully comply with the Agreement, including payment for the Paragon Software and Bar Code Products.

C. On Count Three, for judgment in an amount not yet determined but in excess of $75,000.00, including reasonable attorney's fees, costs, prejudgment interest, and any other damages to which Paragon is entitled in law or in equity;

D.	On Count Four, for judgment in an amount not yet determined but in excess of $75,000.00, including reasonable attorney's fees, costs, prejudgment interest, and any other damages to which Paragon is entitled in law or in equity;

E.	For such other and additional relief as this Court deems just and equitable.

Respectfully submitted,

*/s/ Ezio A. Listati*
Ezio A. Listati (0046703)
Tim L. Collins (0033116)
Elizabeth E. Collins (0091032)
THRASHER, DINSMORE & DOLAN LPA
1111 Superior Avenue, Suite 412
Cleveland, OH 44114
(216) 255-5431 | (216) 255-5450 (fax)
elistati@tddlaw.com | tcollins@tddlaw.com | ecollins@tddlaw.com

*Attorneys for Plaintiff Paragon Data Systems, Inc.*

**JURY DEMAND**

Plaintiff Paragon Data Systems, Inc. demands a trial by jury on all issues so triable on its Complaint to the maximum number of jurors allowed by law.

*/s/ Ezio A. Listati*
Ezio A. Listati, Esq. (#0046703)

*One of the Attorneys for Plaintiff Paragon Data Systems, Inc.*